State ex rel. H. R. DELOATCH v. W. J. ROGERS.

*Election, Law of construed.*

1. The result of an election will not be disturbed because of illegal votes received or legal votes refused, unless the number be such that the correction would show a majority for the contesting party.

2. And the burden of proof is upon the contestant to show the rejection of a sufficient number of votes, even if they ought to have been counted, to reverse the declared result.

3. The election law of 1877, ch. 275, § 20, enumerates three kinds of tickets which are declared void, and must be rejected from the count as to all persons voted for thereon :

(1) Tickets rolled up together.

(2) Those containing the names of more persons than the elector is entitled to vote for—whether for a single office, or for one not to be filled, as in this case.

(3) And those having some device upon them.

CIVIL ACTION in nature of *Quo Warranto*, tried at January Special Term, 1882, of Northampton Superior Court, before *Graves, J.*

The plaintiff appealed.

*Messrs. D. A. Barnes, Mullen & Moore* and *W. Bagley,* for plaintiff.

*Messrs. R. B. Peebles* and *Day & Zollicoffer,* for defendant.

SMITH, C. J. This action is prosecuted under section 366 of the Code to recover possession of the office of register of deeds, which the defendant is alleged to have usurped and to hold, claiming a right thereto by virtue of an election held on the Tuesday next after the first Monday in November, 1880, and into which he was inducted by the board of county commissioners. The relator asserts that he received the largest number of votes cast at the election for the said office, and has been wrongfully deprived of it by the illegal action of the registrar and judges at certain election precincts, in refusing to count large numbers of ballots cast for him in making up the returns transmitted to the county canvassers. The rejected tickets were adjudged to be illegal because they contained upon their face the name of James D. Boone, and he was voted for, for the office of superior court clerk, which he then held by appointment of the judge to fill the unexpired term, resulting from the resignation of the preceding incumbent, and there was no

vacancy to be supplied under the law by a popular election. The form of the ticket is set out in the case. Several issues were submitted to the jury of which those deemed material in considering the appeal, in condensed form with the responses, are as follows:

1. Was the relator voted for at all the election precincts of the county for the office of register? No.

2. Did he receive at the election a majority of the lawful votes cast? No.

3. Did the judges of election, at Rich-Square, Occoneechi and Wiccacone election precincts, refuse to count any votes cast for the relator, and if so, how many? Some at Wiccacone, number not known.

5. How many votes did the relator and defendant respectively receive at these precincts, and how many were returned by the judges of election? For the relator, 2. For the defendant, 549.

6. How many lawful votes were cast in the county for the competing candidates for the said office? For the relator, 1110. For the defendant, 1469.

These findings of the jury were under instructions from the judge, that in passing on the second issue they should exclude from the count all such tickets as contained the name of Boone and were cast for him for the office of clerk, as for the others for their respective officers, which tickets His Honor declared to be void; but that in passing upon the third and fifth issues, all the tickets must be counted inclusive of those rejected in determining the second issue.

At the trial one Kinchen Davis, a witness examined for the relator, stated that there were between 150 and 200 ballots put in the box at Wiccacone bearing the name of Boone for the office of clerk, which were rejected, and that the relator's name for register " was on some of said ballots but he could not tell how many."

Another witness testified that " as many as 300 ballots at

Rich-Square and Occoneechi with Boone's name for clerk on them and that of the relator for register, were thrown out, but the witness could not state the precise number."

From this summary review of the facts it will be noticed that if all the rejected ballots are restored and added to those returned for the relator, so far as can be ascertained with accuracy from the evidence, the aggregate is insufficient to overcome the majority of 359 accorded in the returns to the defendant. How many in excess of the three hundred were thrown out in the count of votes at Wiccacone, which bore the plaintiff's name, is left wholly uncertain, and there must have been of such at least 59 to neutralize the aggregate vote given to the defendant.

It is a well settled rule in contested elections, scarcely needing a reference to authority for its support, that the result will not be disturbed, nor one in possession of office removed, because of illegal votes received or legal votes refused, unless the number be such that the correction shows the contesting partly entitled thereto. If the obnoxious ballots ought to have been counted for the relator, and yet are insufficient to overcome the majority ascertained by the count actually made, the election will stand and the occupant of the place left in unmolested possession of it.

But the argument before us was directed mainly to a review of the ruling of the court in regard to the rejected ballots, and the rendering of the statutory provision relating thereto. Acts 1876–'77, ch. 275, § 20.

As this is a question of frequent recurrence and practical importance, we have deemed it our duty to consider and decide it also. This section is in these words:

" When the election shall be finished the registrars and judges of election, in presence of such of the electors as may choose to attend, shall open the boxes and count the ballots reading aloud the names of the persons who shall appear on each ticket; and if there shall be two or more tickets

rolled up together, *or any ticket shall contain the names of more persons than said elector has a right to vote for, or shall have a device upon it, in either of these cases, such ticket shall not be numbered in taking the ballots, but shall be void,* and the said counting of votes shall be continued without adjournment until completed and the result thereof declared."

The statute enumerates three classes or kinds of ticket which are not to be numbered and are declared to be void, to-wit: tickets rolled up together, tickets with more names than the elector is entitled to vote for, and tickets having some device upon them. It is plain that tickets of either class are not only inoperative as to the person thus improperly voted for, but as to all others for whom the elector may vote. The entire ballot for all is vitiated and must be rejected from the count. The case is not governed by the rule laid down in the cases cited in Judge McCRARY's work on the American Law of Elections, section 399, which in the absence of a statute limits the vitiating effect of such a ballot to the vote for one not to be elected, or to all who are voted for to fill an office, when the number voted for is greater than the number eligible to the office, and leaves the ballot effective as to such as are to be elected and for whom the elector may vote. The statute is peremptory, and the entire ticket, when its provisions are disregarded, is rendered illegal and void.

The sole inquiry then is as to the meaning of the act in its description of that immediate class of tickets, which "contain the names of more persons than the elector has a right to vote for," and is the ticket before us within the compass of its *intent,* as it surely is of its *words?*

Upon full consideration we are of opinion that it is one of the prohibited ballots, and we are not at liberty to restrict its comprehensive terms by adding thereto, as suggested in the argument for the relator, the further qualifying words, *for the same office,* when the general assembly has

not seen fit to use them; nor do we see any reason for annulling the ballot as to the other persons whose names are upon it when more than the proper number are voted for for a single office, which does not apply with equal force to a ballot for an office not to be filled at all. The illegal and irregular votes are equally severable from the other names on the ticket in the one as in the other form of the ballot.

The purpose of similar enactments in the north-western states is there interpreted by the courts to be, to secure by secret ballot, (not open to inspection nor bearing any distinctive mark by which it can be known for whom the elector has voted) his independence and freedom in the exercise of his political right. Our statute is not intended so much to secure this object, as to protect the elector from imposition and fraud in the use of mere party designations and symbols, and to enable him to vote understandingly, and for persons whom he may prefer, according to the true theory of popular institutions.

"The act prescribing the form of the ballot in Mississippi," remarks the judge delivering the opinion of the court in *Oglesby* v. *Sigman*, 58 Miss., 502, "must have been intended to secure uniformity in the appearance of ballots, so that ignorance and blind party devotion might not be led to the adoption of ballots by the guidance of some mark and device, as to which they were instructed by their leaders, and which, instead of intelligent comprehension of whom or for what they are casting their ballots, should determine their selection of ballots to be cast."

Any device put upon a ticket is fatal to its validity, because the elector may be misled by it, and not exercise his own unbiased judgment and choice in determining for what candidates to give his vote.

To permit the insertion of inadmissible names upon it, a ballot may be as effectual in influencing the action of the

DELOATCH *v.* ROGERS.

elector as a prohibited device put upon it for the purpose of distinguishing it. But of the policy and usefulness of a statutory regulation of the ballot as to its form, it is not our province to decide, but to expound and enforce such laws, as the legislature may choose to adopt, according to their true import and meaning. The elective franchise is a valuable right, underlying popular government, and, as all are interested in its honest and intelligent exercise, needs the protection of the law and the repression of all fraudulent practices interfering with the freedom and independence of the elector in casting his vote according to his own choice.

We do not discover any evidence in the present case of fraud or intended wrong on the part of the electors or the judges of election, and our decision rests upon a fair and reasonable construction of the law.

In each aspect of the case, as the burden of proof devolved upon the relator to show the rejection of a sufficient number of votes, even if they ought to have been counted, to reverse the declared result, the judgment of the court must be affirmed.

Nor do we appreciate the force of the objection to the vagueness of the response of the jury to the third issue, since the evidence sent up pertinent to the inquiry does not require, if it indeed authorizes, a more specific finding that can enure to the benefit of the relator.

There is no error and the judgment is affirmed.

No error.                              Affirmed.