FAWCETT v. TOWN OF MT. AIRY.

(Filed December 19, 1903).

MUNICIPAL CORPORATIONS — *Water Companies — Electric Light Companies—Towns and Cities—Necessary Expenses—Const. N. C., Art. VII, sec. 7—The Code, secs. 3800, 3821.*

An expense incurred by a city or town for the purpose of building and operating plants to furnish water and light is a necessary expense, and is not such a debt as must be submitted to a popular vote, and such power is one of implication if not specially conferred.*

ACTION by Thomas Fawcett and others against the town of Mount Airy, heard by *Judge T. A. McNeill* at November Term, 1903, of the Superior Court of Surry County. From a judgment for the plaintiffs the defendant appealed.

*Carter & Lewellyn,* for the plaintiffs.
*S. P. Graves,* for the defendant.

MONTGOMERY, J. Whether a city or town has the right to incur an indebtedness for the erection and operation of plants for the supply of water and electric lights for municipal use and to sell to its inhabitants is a necessary municipal expense, is the question again presented to us for decision. Indebtedness incurred by a city or town for a supply of water stands on the same footing as indebtedness incurred for lighting purposes, and if such indebtedness be a *necessary expense,* then whether or not a municipality may incur it, does not depend upon the approval of the proposition by a majority of the qualified voters of the municipality. It is only in cases where counties, cities or towns undertake to contract debts or

*This overrules, among other cases, the case of *Mayo v. Commissioners,* 122 N. C., 5, and affirms the conclusion arrived at in that case in the dissenting opinion of MR. JUSTICE CLARK.

pledge their faith, or loan their credit or levy taxes, except for the necessary expenses thereof, that the submission of the proposition must be made to a vote of the qualified voters of such county, city or town. *Wilson v. Commissioners,* 74 N. C., 748; *Tucker v. Commissioners,* 75 N. C., 274.

It is almost impossible to define in legal phraseology the meaning of the words "necessary expense" as applied to the wants of a city or town government. A precise line cannot be drawn between what are and what are not such expenses. The consequence is that as municipalities grow in wealth and population, as civilization advances with the habits and customs of necessary changes, the aid of the courts is constantly invoked to make decisions on this subject. In the nature of things it could not be otherwise; and it is not to be expected, in the changed conditions which occur in the lives of progressive people, that things deemed unnecessary in the government of municipal corporations in one age should be so considered for all future time. In the efforts of the courts to check extravagance and to prevent corruption in the government of towns and cities, the judicial branch of the government has probably stood by former decisions from too conservative a standpoint, and thereby obstructed the advance of business ideas which would be most beneficial if put into operation; and this conservatism of the courts, outgrown by the march of progress, sometimes appears at a serious disadvantage.

On this subject this Court, in *Wilson v. Commissioners, supra,* uses the following instructive and suggestive language: "The analogy of the law of the necessities for infants is the only one that occurs to us. It is held that if, considering the means and station of life of the infant, the articles sold to him *may* be necessaries under any circumstances, they come within a class for which the infant may be liable, and upon his refusal to pay it is for a jury to determine whether under the actual circumstances they were necessary. If, however,

the articles are merely ornamental and such as cannot under any circumstances be necessary to the one of means and station of the infant, the Court may as a matter of law declare that the infant is not liable.    We do not undertake to say that this analogy will furnish a rule which will admit of a close application.    But if treated merely as an analogy in the absence of other guides it may be of some general use."

It seems strange that it should be declared by some of our courts of highest reputation that the purchase of a town clock or hay scales or a pump is a necessary expense, when the supply of light to enable its citizens to walk its streets in security, or a supply of wholesome water to prevent disease and suffering, should be held as not a necessary expense.    It is pretty generally held by the courts that the expense incurred for the *widening* of streets is a necessary expense, that a market-house is a necessary expense, and surely if that be sound law the courts ought to hesitate before they would pronounce a debt incurred for the furnishing of light and water not to be a necessary expense.    And it seems to us that it may be reasonably considered as certain that the words "necessary expense" do not mean expenses incurred or to be incurred for purposes or objects that are only for the procurement or maintenance of things absolutely essential to the existence of the municipality.    The expenditure of money for the widening of streets, the erection of market-houses, town clocks and hay scales are all considered as necessary expenses, and those things are not essential to the life of the municipality.    A city or town might be fairly well governed and be prosperous without having appointed and fixed particular places for the sale of market produce, or without keeping the time of day, or weighing grain and fodder; and certainly expenses incurred for water and light are more necessary than those for a market-house, clocks and scales.    The words "necessary expense," then, must mean such expenses as are or may be in-

curred in the establishing and procuring of those things without which the peace and order of the community, its moral interests and the protection of its property and that of the property and persons of its inhabitants would seriously suffer considerable damage, leaving out of view the matter of the great inconvenience that would be attendant upon our present social life for want of such expenditures. The use of water from wells dug in populous communities is proscribed by the recent progress made in the science of bacteriology, the practical lessons of that science having been learned by the people generally.

It is of common knowledge that the most fearful scourges of certain most dangerous forms of fever arise from the use of water from wells in towns and cities; and it is out of the power of individuals in towns and cities to erect and operate appliances for supply of water. As to the question of lighting the streets and public places, the experience of all who live in towns and cities of any considerable population is that without lights upon the streets and in the public buildings both life and property would be insecure, to say nothing of the almost complete destruction of the conveniences of life and the marring of its social features. The fire department, probably the most important of the municipal departments, would be rendered ineffective, and a considerable part of the commerce—trade of the country—would be destroyed; for under our changed conditions a good deal of the traffic between different communities and a respectable part of our mail service are conducted at night. It will not do to say that a city or town may expend money or incur a debt for the purchase of lights by the month or the year, but that it may not incur a debt for the construction and operation of a system of water-works or for the installment of an electric plant for lighting. If the matter of lighting is a necessary expense, then how and in what manner the city shall furnish such

lighting is with the authorities of the city or town to determine. The courts determine what class of expenditures made or to be made by a municipal corporation come under the definition of "necessary expenses." The governing authorities of the municipal corporations are vested with the power to determine when they are needed, and, except in cases of fraud, the courts cannot control the discretion of the commissioners.

Our conclusion, then, is that an expense incurred by a city or town for the purpose of building and operating plants to furnish water and lights is a necessary expense, and is not such a debt as must be submitted to a popular vote before it can be incurred, under section 7 of Article VII of the Constitution; and that under the general law of North Carolina in respect to cities and towns, The Code, sections 3800 and 3821, municipal corporations may contract such debts and provide for their payment, unless there is some feature in the charter of such city or town which prohibits it.

The power to light the streets and public buildings and places of a city is one of implication, where it is not specially conferred, because the use of such power is necessary to fully protect the lives and comfort and property of its inhabitants. It is a most important factor, too, in the preservation of the peace and order of the community. Croswell Law of Elect., sec. 190; *Mauldin v. Greenville,* 33 S. C., 1, 8 L. R. A., 291; *Lot v. Waycross,* 84 Ga., 681. In the case of *Crawfordsville v. Braden,* 136 Ind., 157, 14 L. R. A., 268, 30 Am. St. Rep., 214, the Court said: "So far as lighting the streets, alleys and public places of a municipal corporation is concerned, independently of any statutory power the municipal authorities have inherent power to provide for lighting them. If so, unless their discretion is controlled by some statutory restriction, they may in their discretion provide that form of light which is best suited to the wants and financial conditions of the corporation." It is well settled that the discretion of

FAWCETT *v.* MT. AIRY.

municipal corporations within the sphere of their powers is not subject to judicial control, except in cases where fraud is shown, or where the power and discretion are grossly abused to the oppression of the citizen.   We can see no good reason why they may not also, without statutory authority, provide and maintain the necessary plant to generate and supply the electricity required.   Possessing authority to do the lighting, that power carries with it incidentally the further power to procure or furnish whatever is necessary for the production and dissemination of the light.

The cases on this subject heretofore decided by this Court to the contrary of the present decision, one of which was written for the Court by this writer, are overruled.   The conclusion to which the present Chief Justice arrived in *Mayo v. Commissioners,* 122 N. C., 5, 40 L. R. A., 163, is the conclusion at which we have arrived in this case.

In the case before us the defendant, the town of Mount Airy, was authorized by an act of the General Assembly at its session of 1901, Private Acts, chapter 216, to submit to the qualified voters of the town the question of issuing $50,000 of town bonds for the purpose of defraying the expenses of constructing a system of water-works and installing an electric plant to furnish the town with water and light.   The question was submitted and carried, and the bonds were issued and sold.   The proceeds were applied for the purposes mentioned in the act, but were insufficient to complete the plants. The Board of Aldermen of the town then passed an ordinance that they do borrow the sum of $15,000 upon pledging repayment by issuing bonds of like amount with interest.

The plaintiffs commenced this action to enjoin the issuing of the bonds, and the injunction was granted by his Honor *Judge McNeill,* and the defendant appealed.   His Honor followed the decisions of this Court, and the error he committed was not his own; but it was error, nevertheless.

Reversed.