TOWN OF HENDERSONVILLE v. J. H. JORDAN.

(Filed 22 December, 1908.)

1. Cities and Towns—Bond Issue—Necessary Expense—Streets and Sidewalks—Vote of People—Constitutional Law.

The cost of maintaining the street of a town, to the extent and in the manner required for its good government and well being, is a necessary expense; and an indebtedness incurred on that account, without first submitting it to a vote of the people, is not forbidden by Article VII, sec. 7, of the Constitution.

2. Elections—Cities and Towns—Bond Issue—Statutory Requirements—Private Laws.

The regulations as to holding elections in the town of Hendersonville are contained in the general law on the subject (Revisal, sec. 2958), and the charter of the town of Hendersonville (chapter 97, Private Laws 1901), where the same is not in conflict with the general law; and when, under the provisions of the general law, a bond issue was authorized by the vote of the people of that town, under the charge and supervision of a registrar and two judges, the same is valid.

3. Cities and Towns—Bond Issue—Registrar a Freeholder—Requisites—Substantial Harm—Interpretation of Statutes.

Although the law applicable should require that a registrar of voters in an election held for the purpose of submitting the question of a bond issue to the people of a town should be a freeholder, the objection that he was not one is only an irregularity, and in the absence of any claim or evidence that substantial harm has been done it will not invalidate or affect the result.

4. Cities and Towns—Bond Issue—Vote of the People—Polling Places—Requisites.

The fixing and advertisement of the polling places is of the substance in an election to be held by the voters of a town; but when the judgment appealed from establishes the fact that they had been fixed and advertised as required by Revisal, sec. 2945, applicable in this case, it will be sustained on appeal.

5. Cities and Towns—Bond Issues—Vote of the People—Majority Vote—Statutory Requirements—Constitutional Law.

When the statute under which an election upon the question of issuing bonds by a town declares that the result shall be determined by "a majority of those voting on the proposition," and the issue is for a necessary expense and not within the constitutional restrictions as to municipal indebtedness, the statute controls the question as to their validity.

### 6. Same—Fraud.

The fact that some illegal votes have been cast in an election to determine the question of an issuance of bonds by a town will not affect the result, in the absence of fraud, unless it is made to appear that otherwise a majority of votes would have been cast for the contesting party.

ACTION heard before *Ferguson, J.,* at November Term, 1908, of HENDERSON, a jury trial having been formally waived.

Defendant appealed.

It appeared that defendant had prepared, ready for delivery, $18,000 of corporate bonds, for the purpose of raising money to pave certain streets and sidewalks of the town, the issue having been sanctioned and approved by the voters of the town at an election held to determine this question; that defendant had made an offer to buy the bonds at a specified price, and, the offer having been accepted by plaintiff, defendant resists compliance, alleging that the bond issue is invalid.

The court held that the proposed issue of bonds was legal and valid, and gave judgment for plaintiff, whereupon the defendant excepted, assigning error as follows:

"Exception No. 1. That the court should have held that the law required that there should be three judges, as provided by section 1, chapter 97, Private Laws 1901, appointed to hold the election, and that his Honor's holding that two judges were sufficient is error, to which ruling the defendant excepted.

"Exception No. 2. That the court erred in holding that it was not necessary for the registrar of voters for said election to be a freeholder, to which ruling the defendant excepted.

"Exception No. 3. That the court erred in holding that the law did not require said election to be held in the county courthouse, and that the same was lawfully and regularly held at the town hall, where the mayor holds his court, to which ruling the defendant excepted.

"Exception No. 4. That the court erred in holding that it was sufficient at said election for the majority of the qualified voters *who voted at said election* to carry the proposition and authorize the improvements specified in the proposition, and the

court should have held that it was necessary for a majority of the qualified voters of said town to approve said proposition. To this ruling of the court defendant excepted."

The facts established presented the questions indicated in these assignments of error by defendant.

*McD. Ray* and *Busbee & Busbee* for plaintiff.
*W. A. Smith* for defendant.

HOKE, J., after stating the case: In *Commissioners v. Webb,* 148 N. C., 120, the Court held: "The decisions of this State sanction the position that the costs of maintaining the streets to the extent and in the manner required for the well ordering and good government of a town is a necessary expense, and that an indebtedness incurred for such a purpose does not come under the prohibition of section 7, Article VII, of the Constitution, which forbids a municipality to contract a debt, pledge its faith· or loan its credit, etc., except for the necessary expenses thereof, without a vote of the people. *Fawcett v. Mt. Airy,* 134 N. C., 125; 45 S. E., 1029; 63 L. R. A., 870; 101 Am. St. Rep., 825."

And this being true, the question presented will be determined chiefly by the construction and effect of the statutes applicable to the case. And in reference to the manner of holding municipal elections, canvassing the returns and declaring the result, etc., the general law as to municipal elections (Revisal, sec. 2944) provides: "That all elections held in any city or town shall be held under the following rules and regulations, except in the cities of Charlotte and Fayetteville and the town of Shelby, N. C., and in certain enumerated counties," the town of Hendersonville not being included in the exception. This general law, therefore (Revisal, Title VII—Election, etc.), and the charter of the town, as contained in Private Laws 1901, ch. 97, when it is not inconsistent with the general law, contain the statutory regulations controlling the matter. *Wharton v. Greensboro,* 146 N. C., 356. Referring, then, to these provisions of the statute, it appears that this election was properly held under the charge and supervision of a registrar and two judges instead of three, and that the registrar is not required to be a freeholder. Revisal, sec. 2958. This is certainly a correct position as to the

number of judges, and if it were otherwise as to the qualification of this registrar the objection at most is only an irregularity; and in the absence of any claim or evidence that substantial harm has come of it the authorities are to the effect that such an exception should not be allowed to invalidate or affect the result. *DeBerry v. Nicholson,* 102 N. C., 465; *Sanders v. Lacks,* 142 Mo., 255. And as to the place where the election was held, the general law (section 2946) clearly contemplates that the polling place should be fixed by the governing authorities of the city or town; and while these places are, as a rule, of the substance (McCrary on Elections, sec. 141) and should be established and fully advertised, the facts indicate and the judgment embodies a declaration that the place was designated and fixed by the commissioners, to-wit, at the town hall, a public place in the town, and was fully advertised as required by law.

On the remaining objection urged to the validity of this contemplated bond issue, that a majority of the qualified voters of the town was required, the charter provides expressly in reference to this election that the result shall be determined by "a majority of those voting on the proposition"; and the issue being for a necessary expense of the town, and not within the constitutional restrictions as to municipal indebtedness, the statute law, as stated, controls the question *(Commissioners v. Webb, supra,* and authorities cited); and a clear majority of those voting having approved the measure, the necessary authority for the issue has been established.

The testimony shows, and the finding of the court declares, "that the suggestion of illegal votes does not amount to enough to change the result of the election, provided only a majority of those voting is required to approve the proposition submitted." And, further, "There is no suggestion of any fraud in the election or in counting and reporting the votes or in declaring the result," etc. It is well established with us that "the results of an election will not be disturbed because of illegal votes received or legal votes tendered and refused, unless that number be such that the connection would show a majority for the contesting party" *(Deloatch v. Rogers,* 86 N. C., 357), and this is the generally accepted doctrine. *People v. Cicott,* 16 Mich., 283.

There is therefore no valid objection shown or suggested to the validity of the bonds offered to defendant, and the judgment below is
Affirmed.