THOMAS W. ELLIOTT ET AL. v. STATE BOARD OF EQUALIZATION ET AL.

(Filed 21 December, 1932.)

1. **Constitutional Law A a—Constitution should generally be given interpretation based on broad and liberal principles.**

   A constitution should generally be given an interpretation based upon broad and liberal principles designed to ascertain the purpose and scope of its provisions, and if the meaning is clearly expressed it should be adopted, but if doubtful the intention of those who adopted the constitution must be sought, the words to be taken in their ordinary significance if not resulting in absurdity or contradiction, and recourse may be had to former decisions of the Court construing the provisions.

2. **Schools and School Districts A c—County Boards may create and consolidate districts, but elementary school must be maintained in each.**

   Under the provisions of our Constitution, Art. IX, secs. 2, 3, the counties are made the governmental agencies of the State in the maintenance of the constitutional six-month term of public school, and the county boards of education are given power to create, divide, abolish and consolidate school districts in accordance with a county-wide plan, C. S., 5473, and the Constitution requires by mandatory provision that at least one elementary school be maintained in each district, C. S., 5481, 5483, 5489, but no authority is given the county boards to consolidate taxing and nontaxing districts.

3. **Same—It is not required that high school be maintained in each school district.**

   The county boards of education are given discretionary power to locate high schools within the county on the recommendation of the county superintendent in order to make them available to all the children of the county, but it is not required that a high school should be maintained in each school district of the county and the county board of education may, in the exercise of its discretion, transfer a high school from one district to another.

4. **Same—State Board of Equalization held without authority to discontinue funds for school districts not abolished by county boards.**

   Where a county board of education has refused to consolidate several school districts with one in which a high school is maintained, the one containing the high school being a special tax district and the others nontaxing districts, the State Board of Equalization is within authority under the provisions of chapter 430, section 6, Public Laws of 1931, to refuse to provide general control, instructional service, operation of plant, and auxiliary agencies for such nontaxing districts, the statute failing to include "districts" within the powers of the Board of Equalization, and the Constitution requiring that at least one elementary school shall be maintained in each school district.

APPEAL by defendants from a judgment of *Schenck, J.,* rendered at Chambers in Raleigh, on 27 September, 1932.

This was an application for a writ of *mandamus* to compel the defendants to provide general control, instructional service, operation of plant and auxiliary agencies for a term of six months during 1932-33 for children in certain school districts in Chowan County, known as River View, Ryland, and Ward's.

The parties agreed that the court should find the facts and give judgment thereon; and after considering the complaint, the answer, and the certified minutes of the board of commissioners, the court found the facts to be as alleged in the following paragraphs of the complaint:

2. During the year 1930-31 there were in Chowan County, among other special tax and nontax school districts, the following special tax districts, to wit: Chowan High School, having an authorized tax rate of 30c. on the $100.00 valuation for maintenance and an additional authorized tax rate for bonds, and an actual tax rate of 30c. for maintenance and 20c. for bonds, in which a school with 11 grades was conducted for 8 months with an average daily attendance of 223 2/10, of whom 111 were in the high school grades; River View, having an authorized rate of 30c. and an actual rate of 15c. for maintenance only, in which a school with 7 grades was conducted for 8 months, with an average daily attendance of 43; Ryland, having an authorized rate of 30c. and an actual rate of 15c. for maintenance only, in which a school with 7 grades was conducted for 8 months, with an average daily attendance of 43; Ward's, having an authorized rate of 30c. and an actual rate of 9c. for maintenance only, in which a school with 7 grades was conducted for 8 months, with an average daily attendance of 38.

3. In the May budget of 1931, the plaintiffs requested of the defendants an allotment of teachers and funds for said schools based upon the foregoing facts, but the defendants, being of opinion that River View, Ryland, and Ward's districts should be consolidated with Chowan High School District, refused to allot teachers to said districts or to include them in the budget for participation in State funds, but did allot additional teachers to Chowan High School District. The plaintiff, County Board of Education, being of opinion, however, that such proposed consolidation was impractical and undesirable, refused to consolidate said school district with Chowan High School and no school facilities were furnished by the defendants in River View, Ryland, and Ward's districts during the year 1931-32.

4. On 7 May, 1932, elections were held in River View, Ryland, and Ward's districts which resulted in revoking the special taxes theretofore authorized in said districts making them nontax districts, while Chowan High School remained a local tax district, operating an eight-month term and levying a tax of 14c. for maintenance and 20c. for bonds, and

will in 1932-33 operate an eight-month term and require a special tax of 21c. for maintenance and 8c. for bonds.

5. The plaintiffs being advised that under such circumstances said nontax districts could not lawfully be consolidated with Chowan High School Special Tax District for the ensuing year, and being of opinion that there was no other lawful, equitable, or practical way of handling the situation made no provision for the children of said nontax districts except within the territory comprising said districts, and again requested in the 1932 May budget that teachers and funds be allotted by the defendants to the schools in said district for the six-month term during the year 1932-33, and, upon the refusal of the defendants to do so, again presented the matter to the defendants and demanded that provision be made by the defendants for the operation of a six-month school term for the children of said districts as required by law in such manner as might seem best to the defendants within the limits of the discretion and authority conferred and in accordance with the obligations legally imposed upon them, which demand defendants also refused.

The court further found as facts that in 1931 and 1932 the defendants made a thorough examination into the circumstances affecting the organization of the public schools of Chowan County and found that the schools would be operated more efficiently and economically by assigning additional teachers to Chowan High School and disallowing teachers for River View, Ryland, and Ward's, and in the exercise of their best judgment declined to assign teachers to these schools, but did allow additional teachers for Chowan High School and provided necessary funds for them and for the transportation of the children resident within the other districts. The court was of opinion that River View, Ryland, and Ward's are not of the same type and class as the Chowan High School District, and rendered judgment granting the plaintiff's prayer for relief. The defendants excepted and appealed.

*Attorney-General Brummitt and Assistant Attorneys-General Seawell and Siler for appellants.*

*W. D. Pruden for appellees.*

ADAMS, J. Upon the facts as found by the court the plaintiffs requested the defendants to provide funds and teachers for supporting and conducting a public school in each of the three nontax districts. The defendants declined this request, assigned additional teachers to Chowan High School, and arranged for the transportation thereto of eligible children residing in the other districts. As a consequence, no school is maintained within the boundaries of River View, Ryland, or Ward's District.

The plaintiffs contest the legal right of the defendants to make this order, and the defendants rest their authority upon the following statute: "The State Board of Equalization may refuse to include in the State budget all or a part of the teachers in any school or schools which may be operated in close proximity to another school of the same type and class, when in the opinion of said board such school could be operated more economically and efficiently if consolidated in whole or in part; but in all such cases said board shall designate the school or schools from which teachers are disallowed." Public Laws 1931, ch. 430, sec. 6. Whether this statute justifies the order made by the State Board of Equalization is the question for decision. It will be observed that the section does not contain the word "district," and that it makes no distinction between school districts and schools. It must, therefore, be considered in connection with the facts set out in the judgment of the court.

The Constitution, Article IX, has the following provisions:

SEC. 2. The General Assembly, at its first session under this Constitution, shall provide by taxation and otherwise for a general and uniform system of public schools, wherein tuition shall be free of charge to all the children of the State between the ages of six and twenty-one years.

SEC. 3. Each county of the State shall be divided into a convenient number of districts, in which one or more public schools shall be maintained at least six months in every year; and if the commissioners of any county shall fail to comply with the aforesaid requirements of this section, they shall be liable to indictment.

These sections have been a part of the Constitution since its adoption in 1868—the second amended in 1875 by providing separate public schools for the white and colored races, and the third afterwards amended by providing a school term of six instead of four months pursuant to ratification by the people of the proposed change. Public Laws 1917, ch. 192; Public Laws 1919, ch. 102.

It has been held that these constitutional provisions were intended to establish a system of public education adequate to the needs of the people, affording school facilities to all the children of the State, and that the term "uniform" as used in the second section does not relate to schools so as to require that all schools shall be of the same grade, regardless of the age or attainment of the pupils, but that the term qualifies the word "system," the provision contemplating the establishment of schools of like kind and available generally to the school population. *Board of Education v. Board of Commissioners,* 174 N. C., 469. It has been held, also, that the legislative grant of power to make a division of school districts refers to the establishment or consolidation

of districts as territorial or geographical units and not to the classifica-
tion or segregation of pupils apart from the land on which they live.
*Woosley v. Comrs.*, 182 N. C., 429.   These sections are mandatory,
*Julian v. Ward*, 198 N. C., 480; *Board of Education v. Board of Comrs.*,
*supra*, and for disregard of the mandate in section three the county com-
missioners are liable to indictment.

Each county shall have a convenient number of districts in which one
or more public schools shall be maintained for at least six months in
every year.   The language is plain, and it is asserted that there is no
room for doubt.   We are advertent to the doctrine that a constitution
should generally be given, not essentially a literal, narrow, or technical
interpretation, but one based upon broad and liberal principles designed
to ascertain the purpose and scope of its provisions.   If the meaning
is clearly expressed it should be adopted; if doubtful, the intention must
be sought, *McLeod v. Comrs.*, 148 N. C., 77, and the intention to be
ascertained is the intention of those by whom the constitution was
adopted.   *Collie v. Comrs.*, 145 N. C., 170. · In the attainment of this
end we may resort to the natural significance of the words employed
and if they embody a definite meaning and involve no absurdity or con-
tradiction we are at liberty to say that the meaning apparent on the face
of the instrument is the one intended to be conveyed.   Black on Inter-
pretation of Laws, 17 *et seq.*   Likewise, we may have recourse to former
decisions, among which are several dealing with the subject under con-
sideration.

Among the earlier decisions are some which were made upon the
implied assumption that a school must be maintained in each district;
and in *Collie v. Comrs.*, *supra*, it was definitely said: "Article IX of
the Constitution, after declaring that religion, morality, and knowledge
being necessary to good government and the happiness of mankind,
schools and the means of education shall be forever encouraged, com-
mands in section 3 thereof, that one or more public schools shall be
maintained at least four months (now six) in every year in each school
district in each county of the State."   This interpretation was ap-
proved in *Board of Education v. Board of Commissioners*, 178 N. C.,
305, and in *Lacy v. Bank*, 183 N. C., 373, the Court again observed:
"A proper consideration of the article (Constitution, Art. IX) will
clearly disclose that its provisions are mandatory, imposing on the Legis-
lature the duty of providing 'by taxation and otherwise for a general
and uniform system of public education, free of charge, to all the chil-
dren of the State from six to twenty-one years,' that the school term
in the various districts shall continue for at least six months in each
and every year, and that the counties of the State are recognized and

designated as the governmental agencies through which the Legislature may act in the performance of this duty and in making its measures effective. In various decisions of the Court the importance and imperative nature of these constitutional provisions have been upheld and emphasized." These expositions are positive and unequivocal, and as was said in *Collie's case,* "When 'the people have clearly ordained what shall be done, we, as judges, have nothing to do but to obey and to execute their will."

The third section of Article IX as heretofore construed contemplated at the time of its adoption the maintenance for the required period of a public school in each district. As the means of travel were limited, it was necessary to bring the schools to the pupils instead of transporting the pupils to the schools. Under this system many of the schools were wholly inadequate. It was thought that the combination of the weaker districts could afford relief from some of the evils without disregard of the constitutional mandate, and the county boards of education were authorized to consolidate school districts whenever in their judgment consolidation would better subserve the educational interest of the community. C. S., 5473; *Scroggs v. Board of Education,* 189 N. C., 110. The statutes were amended upon the basis of a county-wide plan of organization, but no authority was given for consolidating taxing and nontaxing districts. *Bivens v. Board of Education,* 187 N. C., 769.

Under the existing law the power to create, divide, or abolish districts is vested in the county board of education, who must exercise the power in accordance with the county-wide plan. C. S., 5481, 5483. When this plan is adopted and two or more school districts are consolidated into one the county board may make provision for transportation of pupils in the consolidated district who reside too far from the schoolhouse to attend without transportation. C. S., 5489. In the present case, however, the four districts have not been consolidated. This is admitted. Indeed, the county board of education refused to consolidate any of them. The several districts are therefore separate entities, in each of which it is ordained that "one or more public schools shall be maintained."

Elementary and high schools are given a statutory definition. In each county the school system shall consist of eleven years or grades and shall be graded on the basis of a school year of not less than 160 days. The first seven years or grades constitute the elementary school and the last four years or grades, the high school. C. S., 5386. An elementary school is classified as a district school that embraces a part or all of the seven elementary grades, but is without a sufficient number of high school pupils or sufficient length of term to become a union

school.  C. S., 5388.  The number of teachers apportioned to elementary schools differs from the number permitted in the high schools, and in the former specified subjects must be taught.  C. S., 5438, 5439, 5440.

The location of high schools is thus provided for: "It is the duty of the county board of education, on recommendation of the county superintendent, to locate high schools in the county or to arrange for high school instruction in special charter districts, so as to provide good high school instruction for all the children.  Since the cost of good high school instruction is too great to permit the location of small high schools close together, it shall be the duty of the county board, wherever the needs demand it, to locate not more than one standard high school in each township or its equivalent:  *Provided,* it shall be discretionary with county boards of education to continue standard high schools now in existence contrary to the provisions of this section, and to establish such high schools in townships in which city schools are already located." C. S., 5437.

This statute was framed in recognition of the difficulty, if not the impossibility, of maintaining a high school in each district, and for this reason it was provided that with reference to the districts the high schools should be located so that instruction in them, as well as in the elementary schools, should be available for all the children of the county —that is, that pupils who have gone through the seven grades constituting the elementary schools shall have the advantage of instruction in the last four grades of the high school.  C. S., 5428.  The question of locating high schools is a matter within the discretion of the county board of education, and in the exercise of such discretion the board may transfer a high school from one district to another.  *Clark v. McQueen,* 195 N. C., 714.  It is manifest that the public school law does not contemplate the creation of a high school in every school district of the State.

The term "high school" is not mentioned in Article IX; the title is of statutory origin.  Still, when high schools are established as the law provides they are made a component part of the public school system to be maintained in like manner with the other public schools and made available to all members of the school population who "are qualified to enter."  This was expressly held in *Board of Education v. Board of Comrs., supra.*

Herein is the marked distinction between the elementary and the high school.  In obedience to the explicit command of the organic law the proper authorities must maintain in every district at least six months in every year one or more schools affording the advantages of the elementary grades.  As indicated by the statutes and the decisions

heretofore cited the constitutional mandate does not extend to the high schools, and we see no reason why adequate provision may not be made for transporting pupils who have completed the elementary grades from the district in which they reside to a high school situated in another which is conveniently proximate.

From what has been written we are led to the conclusion that the section above cited (Laws 1931, ch. 430, sec. 6) did not confer upon the State Board of Equalization the power to discontinue the public schools in River View, Ryland, and Ward's districts and to require the children residing in these districts to be transported to the Chowan High School for elementary instruction. We must, therefore, affirm the judgment directing the defendants to provide general control, instructional service, operation of plant, and auxiliary agencies for these districts in the manner provided by law.

If the provisions of Article IX are obsolete or ill-adapted to existing conditions, this Court is without power to devise a remedy. However liberally we may be inclined to interpret the fundamental law, we should offend every canon of construction and transgress the limitations of our jurisdiction to review decisions upon matters of law or legal inference if we undertook to extend the function of the Court to a judicial amendment of the Constitution.

In concluding, we may suggest that the Report of the Constitutional Commission contains an article on Education which is designed to supersede the present law and to meet the demands of modern educational thought.

The judgment is

Affirmed.