OF

# NORTH CAROLINA

AT

## RALEIGH

## FALL TERM, 1946

JOHN R. PURSER, JR., ON BEHALF OF HIMSELF AND ALL OTHER PROPERTY OWNERS AND TAXPAYERS OF THE CITY OF CHARLOTTE, NORTH CARO-LINA, v. L. L. LEDBETTER, TREASURER OF THE CITY OF CHARLOTTE, AND TREASURER OF CHARLOTTE PARK & RECREATION COMMISSION.

(Filed 11 December, 1946.)

**1. Taxation § 4—**

What is a necessary expense under Art. VII, sec. 7, of the State Consti-tution is a question for the courts, and while great weight will be given a legislative declaration in a statute that the expenditure of funds therein authorized is for a necessary expense, such declaration is not binding on the courts.

**2. Municipal Corporations § 5—**

Municipal corporations derive their powers almost solely from legislative enactment under Art. VIII, sec. 4, of the State Constitution, and are subject to statutory restrictions and regulations of their taxing power.

**3. Municipal Corporations § 42—**

Where a statute authorizing municipal expenditures for a certain pur-pose provides that the question of a bond issue pursuant thereto should be submitted to a vote, the provision for referendum, whether expressed in terms permissive or mandatory, is prerequisite to proceedings by the municipality thereunder.

**4. Constitutional Law § 4—**

The Constitution will be liberally construed in order to adapt it to changing conditions and advancing social needs, but such rule of con-struction cannot override limitations prescribing methods of orderly prog-ress, chief among which are the restrictions upon the taxing and spend-ing power.

1—227

**5. Same—**

Our Constitution is a limitation rather than a grant of powers.

**6. Taxation § 4—**

Approval of taxation by popular vote is the rule, and the power to impose a tax for a necessary expense without a vote is an exception to the rule. Art. VII, sec. 7, of the State Constitution.

**7. Same—**

The imposition of a tax or the expenditure of funds derived therefrom for municipal parks and recreational facilities is for a public purpose but it is not for a necessary municipal expense, Art. VII, sec. 7, of the State Constitution, and the expenditure of funds for this purpose derived from a tax imposed without a referendum will be enjoined by the courts. This result is not affected by the fact that the statute authorizing expenditure of funds for this purpose declares it to be for a necessary municipal expense, Session Laws 1945, ch. 1052.

APPEAL by plaintiff from *Bobbitt, J.,* 19 October, 1946. From MECKLENBURG.

The Charlotte Park and Recreation Commission is an adjuvant Municipal corporation, created under chapter 151 of the Private Laws of 1927, as amended, and is in control of all public parks, playgrounds and recreational facilities of the City of Charlotte. The defendant Ledbetter is its treasurer, and also the treasurer of the City of Charlotte. In the present action it is sought to enjoin the expenditure of a fund in his hands, the proceeds of a tax levy authorized by the city in its budget for the fiscal year beginning 1 July, 1946, for park and recreational purposes, which tax was imposed under the following circumstances:

At a special election held in May, 1927, the qualified voters of the city authorized an annual levy of two cents upon the $100 valuation of property, and the city has continuously since said time levied this tax.

In May, 1939, at a special election, there was presented to the voters of the city the question of authorizing the levy of a tax not exceeding five cents on the $100 valuation, for park and recreational purposes which failed to carry.

In April, 1946, a special election was held, presenting to the qualified voters the question whether the governing body of the city should be authorized to levy each year, for park and recreational purposes, a tax not exceeding seven cents on the $100 valuation, which also failed to carry.

Subsequently, in its budget for the fiscal year beginning 1 July, 1946, the governing body of the city appropriated for "Parks and Recreation Commission" (a) the sum of $22,816 to be raised by the imposition of the two-cent tax theretofore authorized by popular vote, and (b) the further sum of $10,000 to be raised by *ad valorem* tax in addition thereto.

Pursuant to the budget appropriation, the governing body of the city levied the two cents theretofore authorized by vote, and in addition thereto an *ad valorem* tax estimated to be sufficient to raise the $10,000 specially appropriated. The imposition of the last named tax was not authorized by popular vote.

Of the taxes so collected there is now in the hands of the defendant treasurer, $6,745 which, unless restrained, he intends to disburse and expend upon the orders of the Park and Recreation Commission for parks and recreational purposes.

The Parks and Recreation system of the City of Charlotte, now under control of the aforesaid Commission, consists of a total of 460 acres located in different portions of the city, including a large armory-auditorium and an athletic stadium. Upon certain of the lands under its control, the Commission has installed playground equipment for children and adolescents, baseball diamonds, softball diamonds, tennis courts, a swimming pool and a nine-hole golf course. The Commission conducts during the summer months and while the public schools are not in session, a program of supervised recreation for children and adolescents upon its several equipped playgrounds.

The armory-auditorium is a source of income to the Commission, which habitually leases it to private persons for more or less public occasions. The athletic stadium is also a source of income, the Commission renting it out for the staging of athletic events. In the operation of the public swimming pool and in the operation of the public golf course, all who use these facilities are charged a fee therefor.

The total income of the Commission for the last fiscal year was in excess of $84,000.00; and its income from the two-cent tax levy was approximately $24,000.00. About three-fourths of its income was received from other than tax sources.

At the aforementioned hearing, Judge Bobbitt, upon these facts, rendered a judgment dissolving the injunction and dismissing the action. The plaintiff appealed.

*Taliaferro, Clarkson & Grier for plaintiff, appellant.*
*John D. Shaw for defendant, appellee.*

SEAWELL, J. Article VII, section 7, of the Constitution reads as follows:

"That no county, city, town or other municipal corporation shall contract any debt, or pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same, except for the necessary expense thereof unless by vote of the majority of the qualified voters therein."

The foregoing is one of the three sections of this Article which is excepted from the power of the General Assembly to alter. Whatever enthusiasms may be engendered or fostered in the name of progress, they can be indulged only within the limitation thus expressed and cannot be expanded beyond it either by legislative action or by judicial construction, provided these co-ordinate branches of the Government act within the terms of the political and official trusts committed to them.

Of the two, the judiciary has the last say. While the legislative construction of the Constitution is entitled to great weight, it is not binding upon the Court. *Hedgcock v. Davis,* 64 N. C., 650; *Sash Co. v. Parker,* 153 N. C., 130, 134, 69 S. E., 1; *Person v. Watts,* 184 N. C., 499, 503, 115 S. E., 336. The ultimate decision as to what constitutes a necessary expense is always for the courts.

And we may be permitted an interlude to say that a statute which declares certain things to be a necessary expense and immediately provides for a submission of the project to a popular vote, itself presents a question of legislative intent for decision of the Court. See 1945 Supplement to General Statutes of 1943. The Session Laws of 1945, chapter 1052, the "Recreation Enabling Law," sec. 160-156, caption, "Declaration of Policy," declares that the "Creation, establishment and operation of the recreation system is a governmental function and a necessary expense as defined by Article VII, section 7, of the Constitution of North Carolina," and in the same frame and connection, provides for a submission of the proposal to a vote of the qualified voters, regardless of whether voluntarily initiated by the Governing Body (sec. 160-159) or on petition of the requisite number of qualified voters (sec. 160-163). The suggestion by appellee that such a referendum only serves the purpose of advising the Governing Body in the exercise of its discretion and that an unfavorable result in the election may be immediately disregarded under a general power to tax for necessary municipal expense, has been dealt with in numerous decisions and the answer given is *contra. Ellison v. Williamston,* 152 N. C., 147, 67 S. E., 255; *Warsaw v. Malone,* 159 N. C., 573, 75 S. E., 1011; *Murphy v. Webb,* 156 N. C., 402, 72 S. E., 460; *Hendersonville v. Jordan,* 150 N. C., 35, 63 S. E., 167; *Commissioners v. Webb,* 148 N. C., 120, 61 S. E., 670; *Robinson v. Goldsboro,* 135 N. C., 382, 47 S. E., 462; *Wadsworth v. Concord,* 133 N. C., 587, 45 S. E., 948.

As we have heretofore observed, municipalities derive their powers almost wholly from legislative enactment under Article VIII, section 4, of the Constitution, and are subject to statutory restriction and regulation of the taxing power. *Justice Hoke,* speaking for the Court in *Ellison v. Williamston, supra,* said:

"We hold it to be a proper construction of the statute, *and others of similar import,* that where a legislature confers powers on a municipal

corporation to submit the question of a bond issue for an enterprise of this character, and the statute is still in effect, it is equivalent to legislative declaration and requirement that the sense of the voters shall be had before the undertaking is entered upon.   True, we have decided in several of the more recent cases that where the question is presented as an open proposition, the obligations of the municipality incurred for the purpose indicated should be considered a necessary expense, that they do not come within the constitutional provision as to incurring municipal indebtedness, contained in Article VII, sec. 7, and that no vote of the people is ordinarily required.   *Bradshaw v. High Point,* 151 N. C., 517, 66 S. E., 601; *Commissioners v. Webb,* 148 N. C., 120, 61 S. E., 670; *Fawcett v. Mt. Airy,* 134 N. C., 125, 45 S. E., 1029.   But these and other decisions are also to the effect that, while there is no definite constitutional restraint in reference to indebtedness of this character, the question continues to be a matter of legislative regulation, and that the limitations and restraints established by the statute law must always be observed and complied with."

And further:

"When a statute of the Legislature provides for an election on a proposition of this character to incur indebtedness, even for a necessary expense, and the statute is still in force, such an Act is expressive of the legislative requirement that before the enterprise may be entered upon, an election must be held, *whether the act be expressed in terms permissive or mandatory,* and that any effort of the authorities to proceed without the sanction of popular approval so obtained, would be without warrant of law.   To hold otherwise would be to declare that an act of our Legislature deliberately and formally passed, was utterly without significance.   (Italics supplied.)

These clear-cut cases, undistinguishable from the case at bar, might be laid down as determinative of the present appeal; but because of the importance of the subject we prefer to rest decision on the Constitution rather than on an Act of the General Assembly which may be changed biennially or oftener.

We are not inadvertent to the uses of a written Constitution and the arguments that have been addressed to the propriety of a liberal construction so that it may aid, rather than retard, the march of progress. Concededly, from its nature and purpose, a constitution is intended to be a forward-looking document, expressing the basic principles on which government is founded; and where its terms will permit, is to be credited with a certain flexibility which will adapt it to the continuous growth and progress of the State.   *Elliott v. Equalization Board,* 203 N. C., 749, 753, 166 S. E., 918.   But when the Constitution provides how orderly progress may be fostered and advanced, and the process involves political

rights reserved or expressly secured to the people, the courts will be careful not to encroach on that prerogative, will be inclined to find in the provision itself the liberality and flexibility which the Constitution intends.

In *Helvering v. Davis,* 301 U. S., 619, 81 L. Ed., 1307, 109 A. L. R., 1319, *Justice Cardoza,* writing the opinion of the Court, observed:

"Needs that were narrow or parochial a century ago may be interwoven in our day with the well-being of the nation. What is critical or urgent changes with the times."

And in *Gaizer v. Buck,* 203 Ind., 9, 179 N. E., 1, 82 A. L. R., 1348, it is said:

"The language of the Constitution (or statute) is generally extended to include new things and new conditions of the same class as those specified which were not known or contemplated when it was adopted."

This, however, is no more than an open-minded approach to the subject. Fully recognizing the propriety of that liberal construction necessary to keep the Constitution a living influence in the affairs of government, adapted to advancing social needs and improved concepts of the governmental function, we are still left the question whether with respect to the enterprise proposed by the City of Charlotte, the conditions precedent to judicial approval now exist,—whether the proposal, meritorious as it may be as a public purpose, may not be more properly embraced in a class with those comparatively more urgent causes which this Court, in obedience to the constitutional mandate as we have understood it, has left to approval by popular vote.

Our Constitution is one of limitations rather than of grants. Some of these limitations, coming from a simpler and franker age, may be austerely expressed,—but they lay down rules of administration still salutary in a democratic government. Undoubtedly, the restriction upon the taxing and spending power is one of the most important of these.

It is a matter of common knowledge that movements in recent years to enlarge the power of the Legislature over taxation have, paradoxically, resulted in amendments to the Constitution imposing even greater restriction. It would not be telling the whole truth to say that this attitude of the people is the product of history; it would be more accurate to say that history is the product of the attitude. Beyond doubt it strongly influenced the adoption of a provision which would largely put upon the people themselves the responsibility for the wisdom of incurring debt or submitting to taxation by requiring popular approval of the enterprise when currently presented.

Under Article VII, section 7, of the Constitution, approval of taxation by popular vote is the rule, direct imposition for necessary expense is the exception. Direct imposition of tax lies so narrowly within that

exception as to provoke the statement in Connor and Cheshire's Anno-
tations, p. 315:

"This section indirectly, but explicitly, permits the exercise by munici-
pal corporations of the power of making provision for necessary expenses,
free from the restraints in other cases. *Gardner v. New Bern,* 98 N. C.,
228, 3 S. E., 500; *Jones v. New Bern,* 152 N. C., 64, 67 S. E., 42."

And in *Jones v. Commissioners,* 137 N. C., 579, 599, 50 S. E., 291, it
is said:

"The exception was partly made because it would be impracticable to
refer all of these current expenses to popular approval, but an equally
important reason was that local authority should not be withdrawn from
all legislative provision and control."

The referendum is definitely recognized as an instrument of demo-
cratic government, widely used, and of great value. Where it is adopted
in the Constitution it is entitled to respect and should not be abridged
by withdrawal from its processes of the subjects with which it was
intended to deal.

It may be conceded, as stated *supra,* that the term "necessary expenses"
does not imply expenses without which government cannot exist. Still
there is implied in it a certain degree of exigency, the essentials of
frugality and economy, and a definite quality,—governmental in char-
acter,—which do not yield to arguments *ab convenienti* and which cannot
be dismissed from the provision without depriving it of all significance.
We do not believe that the framers of the Constitution intended that this
highly protective restriction should be annulled by an unlimited power
of redefinition so that in time the municipal expense budget might
become a *potpourri* of subjects representing no real governmental need
but rather the urge to find in a patriarchal government a panacea for
all the discomforts to which the citizen may be subject.

Between the extremes there is a line, shifting with progress it may be,
which the Court must seek with diligence and anxiety, with respect to
every new proposal brought under review.

The trend of decision in this State is strongly against the contention
of the appellee, and inclines us to the view that the judgment of the
lower court is not consistent with the constitutional restriction.

The Court has in numerous instances passed upon municipal enter-
prises proposed as subjects of necessary expense, has admitted some, and
rejected others. We suggest a three-way comparison between those ad-
mitted as necessary expenses, those rejected, and the proposal under
review. We may be enlightened as to what accreditation the latter may
have for the approved class, as judged *a sociis.*

Approved as necessary municipal expenses have been: Streets, *Young
v. Henderson,* 76 N. C., 420; *Greensboro v. Scott,* 138 N. C., 181, 50

S. E., 589; *Commissioners v. Webb,* 148 N. C., 120, 61 S. E., 670; *Hendersonville v. Jordan,* 150 N. C., 35, 64 S. E., 167; *Jones v. New Bern,* 152 N. C., 64, 67 S. E., 173; sidewalks: *Hester v. Traction Co.,* 138 N. C., 288, 50 S. E., 711; *Commissioners v. Webb, supra; Smith v. Hendersonville,* 152 N. C., 617, 68 S. E., 145; water, and lights: *Fawcett v. Mt. Airy,* 134 N. C., 125, 45 S. E., 1029; *Water Co. v. Trustees,* 151 N. C., 171, 63 S. E., 742; sewerage: *Greensboro v. Scott, supra; Bradshaw v. High Point,* 151 N. C., 517; market house: *Smith v. New Bern,* 70 N. C., 14; *Swinson v. Mt. Olive,* 147 N. C., 611, 61 S. E., 569; municipal buildings: *Hightower v. Raleigh,* 150 N. C., 569, 65 S. E., 269. Some of these were held to be objects involving necessary expenses when first challenged and reviewed,—others, such as light, water and sewerage, had to knock at the Judicial Chamber repeatedly before admission.

Rejected are: Aid to public schools (where not an agency for the State), *Rodman v. Washington,* 122 N. C., 39, 30 S. E., 118; *Hollowell v. Borden,* 148 N. C., 255, 61 S. E., 638; hospitals: *Adams v. City of Durham,* 189 N. C., 232, 126 S. E., 611; *Burleson v. Board of Aldermen,* 200 N. C., 30, 156 S. E., 241.

As to the first class of purposes,—those for which tax may be levied directly, there can scarcely be a reasonable doubt of the question of governmental necessity. As to the second class, those which require approval by popular vote, it is hardly debatable that they are, by comparison in point of exigency, of greater public necessity than the enterprises now under review.

The Constitution plainly lays upon all agencies concerned with administration, including the courts, the duty to put first things first; not to lose perspective in spending tax money, which is said to be the lifeblood of government. So long as our conception of municipal power is such as to permit those who fight the battles of industry in crowded cities to be regarded as dispensable, and the casualties of accident and disease, directly caused or greatly augmented by congested living, as of no direct concern of municipal government, it is difficult to see how playgrounds and recreational facilities can be regarded as a necessary municipal expense.

Independently of any question as to the degree of social necessity, we believe that the activities proposed, however qualifying as a public purpose for which the municipality may provide by approval of the people, are too remote from the governmental function to be classed as objects of necessary public expense.

Our attention is called to *Atkins v. Durham,* 210 N. C., 295, 186 S. E., 330, in which recreational facilities were "under the facts" of the case held to be necessary expense; and to *Twining v. Wilmington,* 214 N. C., 655, 200 S. E., 416, which, on a similar factual situation, held to the contrary.

A careful study of *Atkins v. Durham, supra,* has led us to the conclusion that its authority should not be revived or extended; and it will, therefore, not be followed as a precedent. It may be said, however, that no commitment made upon the strength of that opinion while it was the "law of the land" will be disturbed. *Atkins v. Durham, supra,* is based almost wholly on *Hill v. Commissioner of Internal Revenue* before the U. S. Board of Tax Appeals, docket number 67105, 19 November, 1935, and the conclusion of that Board. The leading cases cited in the Tax Appeal report are from states which do not have a provision comparable to Article VII, section 7, of our Constitution. Here the section necessitates a distinction between "public purpose" and "necessary expense" which must be meticulously observed in exercising the taxing power. The welfare clause in the General Statutes conferring powers on municipalities, and usually found in their charters, cannot be cited or expanded to defeat the Constitution. A full discussion of the principle involved will be found in *Power Co. v. Clay County,* 213 N. C., 698, 192 S. E., 603. See also *Sing v. Charlotte,* 213 N. C., 60, 195 S. E., 271.

Also, the *Atkins case* proceeds on the theory that, by constitutional intent, the restriction may apply to some municipalities and not to others, depending upon population, industrial and other factors—a rule which if left to the governing bodies to apply, invades the province of the courts, and if left to the courts, is difficult, if not impossible, to apply. However such conditions may control the taxing authorities in determining, within the scope of their power, when a need, recognized by the Constitution as a necessary expense, arises in the particular jurisdiction, no such distinction is inherent in the constitutional provision. What is a necessary expense is a matter for the courts.

This decision closes no gate to the people of Charlotte, or of any other municipality, if they have the will to open it. The Constitution makes them trustees of their own progress. It neither drives them nor stays them, but leaves with them the responsibility for the wisdom of the venture.

The governing body has twice presented the question of the levy of this tax to the qualified voters of the City of Charlotte for their approval and it has been twice voted down. Disregarding this, the taxes were levied and collected. For the reasons stated it is our opinion, and we so hold, that the levy and collection of the tax was without warrant of law and the proposed expenditure should be restrained. The judgment to the contrary is reversed.

The cause is remanded to the court below for judgment and proceedings in accordance with this opinion.

Reversed and remanded.