GREENE COUNTY ET AL. v. SNOW HILL RAILWAY COMPANY ET AL.

(Filed 11 September, 1929.)

1. **Taxation A a—Township bonds to aid in construction of railroad are not for necessary expense and issuance must be submitted to voters.**

Township bonds issued for aiding the construction and operation of a railroad therein are not for a necessary expense, and require the approval of the voters of the township under a valid statute authorizing the issuance of the bonds.

2. **Statutes A c—In this case held: curative statute and ratification of acts under prior defective statute valid and constitutional.**

A retrospective act to cure an irregular or defective statute and to ratify proceedings thereunder, which the Legislature originally had the authority to enact, and which does not impair the obligations of a contract or affect vested rights is valid and constitutional.

3. **Taxation A f—In this case held: act not specifying amount of bond issue cured by later statute prescribing amount.**

Where a statute authorizing a township to issue bonds to aid in the construction of a railroad therein omits to specify the amount of the issuance, and the commissioners have called an election upon a petition therefor to vote thereon in an amount not to exceed $100,000, and this election is carried and the bonds are issued in that sum and held in escrow, and later a curative statute is enacted likewise fixing the amount of the issue in that sum: *Held*, the bonds are not invalid by reason of the omission in the original act.

4. **Same—Denomination of bonds held a detail concluded by signature of chairman and clerk of county commissioners under facts of this case.**

Where an act authorizing the issuance of township bonds provide that they shall be in the sum of $100 each, and a curative act is passed providing that the signature of the chairman and the clerk of the board of county commissioners "shall be conclusive of said form and details" the denomination of the bonds, nothing else appearing, is to be regarded as a detail, and validity of the bonds is not affected by the fact that they were issued in larger denominations.

5. **Taxation A c—Uniform rule of taxation applies to levy of taxes and not to expenditure of revenue derived therefrom.**

Township bonds to aid in the construction of a railroad, issued in accordance with a valid statute, are not objectionable on the grounds that taxes levied against such railroad are to be expended in paying the interest coupons of the bonds and in maintaining the sinking fund provided for in the act, the provision of the Constitution requiring uniformity in the levy of taxation not applying to the distribution of the revenue derived therefrom.

CIVIL ACTION, before *Grady, J.*, at Chambers. From GREENE.

On 27 February, 1917, the General Assembly of North Carolina enacted chapter 403, Public-Local Laws of North Carolina. In sub-

stance the act provided that the board of commissioners of Greene County, upon petition of one-fifth of the voters of any township or townships, were authorized to call an election in such township for the purpose of submitting to the qualified voters thereof the question of subscribing a specific sum for the purpose of constructing a standard gauge railway "either from the town of Hookerton or the town of Maury, Greene County, North Carolina, to the town of Snow Hill." Pursuant to said statute a petition was filed with the board of commissioners of Greene County requesting the said board to call an election "for the purpose of voting bonds to secure a railroad from Hookerton, North Carolina, to Snow Hill, North Carolina," the amount of the bonds issued not to exceed $100,000. Thereupon, on 3 November, 1919, the board of commissioners found that said petition was signed by one hundred and sixteen voters of Snow Hill Township, and that said number was more than one-fifth of the voters of said township. Consequently it was "ordered that an election be held on Friday, 12 December, 1919, according to law and the provision of said act, in said Snow Hill Township, at the usual voting place at Snow Hill, upon the said proposition to subscribe a sum not exceeding $100,000 for said first mortgage bonds." Thereafter an election was duly held in Snow Hill Township on Friday, 12 December, 1919. The canvassing board reported that there were two hundred and fifteen registered voters, and further, that there were cast "For subscription" one hundred and seventy-three votes, and "Against subscription," three votes. On 4 February, 1924, the board of commissioners duly passed a resolution declaring that "the one hundred thousand of Snow Hill Township bonds, voted 12 December, 1919, are fully authorized, and the said election was duly and properly held, and the said bonds shall now be prepared and issued in accordance with the law." The resolution of the board recites that the Snow Hill Railway Company had offered to build said railway, and thereupon it was resolved "that the proposition submitted by the Snow Hill Railway Company for the said bonds at par and interest, is hereby accepted, and same ordered to be duly filed." Thereafter, on 3 November, 1924, the commissioners duly passed a resolution that "$100,000 Snow Hill Township public improvement bonds shall now be executed with the written signature of the chairman of this board and attested by the clerk with the county seal impressed on it, dated 1 September, 1924; . . . that said bonds shall be deposited in the Snow Hill Banking and Trust Company, . . . and held by said bank in escrow, . . . and shall be finally delivered to the order of said purchaser when the said railway has been completed and placed in operation, and the resolution determining such fact shall have been passed by the board." In pursuance of the resolution bonds were executed and placed in escrow with the Snow

Hill Banking and Trust Company. Subsequently the National Bank of Snow Hill was duly appointed receiver of the Snow Hill Banking and Trust Company, which said receiver now holds said bonds.

On 12 March, 1928, the commissioners of Greene County and a number of taxpayers of Snow Hill Township instituted an action against the Snow Hill Railway Company, the National Bank of Snow Hill, receiver, and others, seeking to enjoin the said receiver from delivering said bonds or any proceeds thereof.

After hearing the cause the trial judge entered judgment "that the defendant, National Bank of Snow Hill, receiver of Snow Hill Banking and Trust Company, is perpetually enjoined and restrained from delivering to the Snow Hill Railway Company, . . . or to any other person the bonds described in the complaint." It was further adjudged "that said bonds be delivered up by the said defendant, National Bank of Snow Hill, receiver of the Snow Hill Banking and Trust Company, to the clerk of the Superior Court of Greene County and by said clerk be marked canceled under the terms of this judgment."

From the foregoing judgment both parties appealed.

The plaintiffs appealed for the reason that the judgment rendered "failed to expressly declare that any attempted issuing of any bonds heretofore upon the face of the whole record `. . . was unauthorized and a nullity."

*L. V. Morrill and Cowper, Whitaker & Allen for plaintiffs.*

*Fuller, Reade & Fuller, John Hill Paylor and J. Paul Frizzelle for defendants.*

BROGDEN, J. Three questions of law are presented by the record:

1. Did the commissioners of Greene County have the power to issue the bonds in controversy?

2. Was the power properly exercised?

3. Are the bonds valid?

As the bonds were not issued for a necessary expense of a township, the power of the commissioners to issue them depended upon valid legislative authority and a vote of the people as contemplated by law. *Henderson v. Wilmington,* 191 N. C., 269, 132 S. E., 25; *Herring v. Dixon,* 122 N. C., 420, 29 S. E., 368; *Tate v. Commissioners,* 122 N. C., 812, 30 S. E., 352.

An election was duly held on 12 December, 1919. No attack is made upon the regularity of this election. However, an attack is made upon the special legislative authority, empowering the commissioners to call the election and issue the bonds. The legislative authority is contained

in chapter 403 of Public-Local Laws of 1917, ratified 27 February, 1917, and in chapter 89 of Public-Local Laws, Extra Session, 1924, ratified 21 August, 1924.

The act of 1917 is assailed upon four distinct grounds:

(a) That the bonds contemplated were the bonds of Greene County and not those of Snow Hill Township.

(b) That no specific sum was mentioned therein.

(c) That the bonds were to be delivered to the Railway Company when the railroad shall have been completed and put in operation, and in addition, when the railroad delivered to the board of commissioners its bonds secured by first mortgage upon its property. The plaintiffs contend that the railroad, when completed, would engage in interstate commerce and, as it had no authority so to do, no valid delivery of the bonds could be made.

(d) That the act is unconstitutional by reason of the provisions of section 4 thereof to the effect "that all taxes levied upon the said railroad properties, when the said extension shall have been completed, shall be paid to the treasurer of Greene County and by him expended in paying the interest coupons and sinking fund hereinbefore provided for."

Chapter 89 of Public-Local Laws, Extra Session, 1924, is a curative act and ostensibly designed to supplement the act of 1917, and purports to validate the bonds. The act of August, 1924, provides that the bonds "shall be issued in the name of Snow Hill Township by the board of county commissioners of Greene County as agents of Snow Hill Township, in the amount of $100,000, . . . to be known as the Snow Hill Township public improvement bonds, and to be in such further form and details as may be provided by the chairman and clerk of said board of county commissioners whose signatures thereto shall be conclusive determination of said form and detail."

The plaintiffs also attacked the curative act of 1924. It is perhaps pertinent to observe in the outset that the petition for the election, signed by one-fifth of the qualified voters of Snow Hill Township, expressly provided that the amount of the bonds to be issued was not to exceed $100,000. The resolution of the county commissioners calling the election also stipulated that the election was to be held in order to determine whether or not Snow Hill Township would subscribe "a sum not exceeding $100,000." It would appear that the expression "not exceeding $100,000" would be sufficiently specific. But, however that may be, the curative act expressly specifies $100,000 in bonds. The objection to the act of 1917 upon the ground that the bonds are issued by Greene County is also removed by the curative act of 1924, which provides that in issuing the bonds Greene County should act as agent for Snow Hill Township. Therefore, if the curative act is valid, the principles an-

nounced in *Commissioners v. State Treasurer,* 174 N. C., 141, 93 S. E., 482, and in *Commissioners v. Boring,* 175 N. C., 105, 95 S. E., 43, would have no application.

The general rule with respect to curative acts of the kind involved in this controversy is thus stated in *Belo v. Commissioners,* 76 N. C., 489: "The competency of the Legislature to enact retrospective statutes, to validate an irregular or defective execution of power by a county corporation, is well settled. In *St. Joseph Township v. Rogers,* 16 Wall., 644, the election at which the subscription was approved was held before the law authorizing the subscription, and the court there decided that this and all defective subscriptions of the kind may be ratified, where the Legislature could have originally conferred the power, and that such laws when they do not impair any contract or injuriously affect the rights of third persons are never objectionable. The ratification operates as a previous authority." The principle thus announced has been cited with approval in many decisions of this Court. *Leak v. Gay,* 107 N. C., 468, 12 S. E., 251; *Edwards v. Commissioners,* 183 N. C., 58, 110 S. E., 600; *Jones v. Board of Education,* 185 N. C., 303, 117 S. E., 37; *Holton v. Mocksville* 189 N. C., 144, 126 S. E., 326. Manifestly, the Legislature had the power originally to fix a specific amount of said bonds and to empower Greene County to act as agent for Snow Hill Township. No principle of law is called to the attention of the Court tending to establish the invalidity of the curative act. Therefore, the first two grounds of objection to the act of 1917 are removed by the curative act of August, 1924.

The third ground of attack upon the act of 1917 refers to the delivery of the bonds rather than to their validity.

The fourth ground of attack is based upon section 4 of the act of 1917, which provides "that all taxes levied upon said railroad properties . . . shall be . . . expended in paying the interest coupons and the sinking fund hereinbefore provided for." This ground of attack cannot be sustained. The point has been expressly decided in *Brown v. Commissioners,* 100 N. C., 92, 5 S. E., 178; *Tate v. Commissioners,* 122 N. C., 812, 30 S. E., 352; *Newell v. Green,* 169 N. C., 462, 86 S. E., 291. In the latter case the Court declares: "Even if this were a property tax and not a privilege tax or an exercise of the police power, the provision of the Constitution requiring uniformity applies to the levy of taxes and not to the distribution of the revenue derived therefrom."

The application of the principles of law pertinent to this controversy leads to the conclusion that the commissioners of Greene County had the power to issue the bonds, and that such power has been properly exercised. Therefore, it follows that the bonds are valid.

Attention is called to the fact that the act of 1917 provided that the bonds should be "in the sum of $100 each"; whereas, in fact, the bonds as issued have been issued in the sum of $1,000 each. It will be observed, however, that the curative act of 1924 provides that the signatures of the chairman and the clerk of the board "shall be conclusive determination of said form and details." The denomination of the bonds, nothing else appearing, is a detail.

The final inquiry is whether the bonds can be delivered to the railway company. A companion case to this case is *Brummitt, Attorney-General, v. R. R., ante,* 381, in which action the Attorney-General brought a suit to forfeit the charter of Snow Hill Railway Company. This Court held that the Attorney-General had no power to invoke a forfeiture of the charter of Snow Hill Railway Company under the circumstances appearing in the decision. The judgment of the trial court in requiring the bonds to be canceled was based entirely upon the proposition that the charter of the Snow Hill Railway Company had been forfeited and that the railroad, when completed, would engage in interstate commerce, contrary to law. The act of 1917, and the act of 1924 specified certain conditions under which the bonds may be delivered. Unless the Snow Hill Railway Company can comply with all statutory conditions, no valid delivery of the bonds can be made to it. This phase of the controversy, however, is not before us, and this opinion of the Court is confined exclusively to the questions of law discussed and decided herein.

Reversed.